**SO ORDERED.**

**SIGNED this 24th day of August, 2015.**



BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                                )
                                      )
Cecilia Scarborough Thomas,           )        Case No. 12-11126
                                      )
        Debtor.                       )
                                      )
_____)

### MEMORANDUM OPINION SUSTAINING OBJECTION TO CLAIM

THIS CASE came before the Court for hearing on June 10, 2015 (the "Hearing"), on Cecilia S. Thomas's ("Debtor") Objection to Claim Number 3 of Mary Vuncannon [Doc. # 44] (the "Claim Objection"). At the Hearing, Phillip E. Bolton appeared for the Debtor and J. Brooks Reitzel, Jr. appeared on behalf of Mary Vuncannon (the "Claimant"). The Court, having considered the proof of claim and exhibits attached, Claimant's Brief, Debtor's Brief, the evidence admitted at the hearing, the record before the Court, and the arguments of counsel, finds that the Claim Objection should be sustained and the claim disallowed. This Memorandum Opinion shall constitute the Court's findings and conclusions pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

FACTS[1]

In the Claim Objection, the Debtor requests that the Court disallow Claim No. 3 (the "Vuncannon Claim"), filed by Claimant on August 29, 2012.  The Debtor filed a Chapter 13 Voluntary Petition on August 2, 2012  [Doc. # 1] (the "Petition").  On Schedule D to her Petition, the Debtor listed Mary Vuncannon as a secured creditor, holding a disputed claim in the amount of $84,000.00, secured by a Deed of Trust on the Debtor's residence located at 407 Hillcrest Drive, High Point NC 27262 (the "Property").  The Debtor's schedules reflect the following additional liens on the Property: a note and deed of trust held by High Point University in the amount of $42,000; a judgment lien held by the City of High Point in the amount of $3,000.00; and a "potential" judgment lien in favor of JP Morgan in the amount of $26,470.00.[2] According to Schedule A to the Petition, the Property has a value of $385,000.

The Vuncannon Claim asserts a claim in the amount of $84,056.67, secured by a Deed of Trust against the Property.  In support of her claim, Claimant attached an unsigned copy of a Promissory Note (the "Note") and a notarized copy of a Deed of Trust (the "Deed of Trust"), purportedly signed by the Debtor and her non-filing spouse, Leonard Thomas ("Mr. Thomas"),

---

[1] At the hearing, the Debtor offered her own testimony and the testimony of Mr. Thomas.  The Claimant offered her own testimony and the testimony of her husband, Don D. Vuncannon ("Mr. Vuncannon").  The testimony from the parties was irreconcilable.  The Court has considered the record in this case, the testimony, the credibility of the witnesses, and other evidence presented, and the following facts constitute the factual findings of the Court based upon the evidence as presented.

[2] The City of High Point filed Proof of Claim 1-1, asserting an unsecured claim in the amount of $3,533.46. Guilford County filed a Proof of Claim 2-1, asserting a claim in the amount of $31,144.25 secured by a tax lien on the Property.  High Point University filed Proof of Claim 5-1, asserting a claim in the amount of $86,949.13 secured by a deed of trust on the Property.  The Debtor's confirmed chapter 13 plan (the "Chapter 13 Plan") provided that: the Debtor would make regular monthly payments of $200 increasing to all funds available on the Guilford County tax claim; the High Point University claim and deed of trust would be satisfied through a sale of the Property; and that the Vuncannon claim would be resolved by the Court, and, to the extent allowed, paid from a sale of the Property.

which Deed of Trust was recorded on October 28, 2009, with the Guilford County Register of Deeds at Book 7070, Pages 261-264.

Mr. Thomas is a general contractor who, in early 2009, began working on the home of Claimant and Mr. Vuncannon (collectively, the "Vuncannons").  Mr. Thomas initially had a contract with the Vuncannons to complete certain repairs and improvements (the "Project") on the home.  The testimony varied greatly regarding the initial contract price and the initial scope of the work, and it is unnecessary for the Court to determine the particulars of the original contract terms for purposes of the matter currently before the Court.  The Vuncannons testified that the initial contract price was $37,000, which amount was paid to Mr. Thomas in advance. Mr. Thomas disputed the $37,000 initial contract price, testifying that the initial contract amount was much smaller, but that, at some point, the scope of the project and material costs rose above the initial cost estimate.  The Vuncannons, in contrast, testified that Mr. Thomas spent the initial $37,000  on personal expenses and other obligations unrelated to the Vuncannons' home.[3] Regardless, Mr. Thomas's and the Vuncannons' testimony was consistent that the Vuncannons began to purchase certain materials for the project at their own expense in order to finish the Project.  Both the Debtor and the Vuncannons testified that the Debtor had never met, spoken to, or had any direct dealings with the Vuncannons prior to the bankruptcy filing.

Mr. Thomas testified that the Vuncannons had few to no complaints about his work, except for one instance of misconduct by an associate of Mr. Thomas, who was removed from the Project.  Conversely, the Vuncannons testified that they not only were dissatisfied during the construction with the quality of the work and the amount of time taken to complete the project, but also that they told Mr. Thomas that they were extremely dissatisfied that he had used the

---

[3] The Vuncannons further testified that Mr. Thomas received proceeds from the Vuncannons' insurer intended to repair their roof from storm damage but used those funds elsewhere.

contract proceeds for matters unrelated to the labor and materials on their home.  The Vuncannons each recalled numerous conversations with Mr. Thomas about their dissatisfaction.  Despite their concerns, the Vuncannons continued to employ Mr. Thomas.  The Vuncannons testified that, in order to ensure the Project's completion and their reimbursement for any additional funds they incurred in paying for materials that were intended to be covered by the fully paid initial contract balance, they proposed a new contract with Mr. Thomas.  The Vuncannons offered into evidence as Claimant's Exhibit D a copy of the new contract, which they testified Mr. Thomas signed in their presence on September 10, 2009 (the "New Contract"). The New Contract is a four page document drawn up by Claimant that, among other things, recites that Mr. Thomas already had been paid in full for the Project, lists the detailed work left to be done on the house, requires completion of the project by December 9, 2009, provides for the Vuncannons to fund the remaining work in exchange for a promissory note from Mr. Thomas and the Debtor in the amount of $50,000 secured by a deed of trust on his residence, and requires Mr. Thomas to obtain the Debtor's signature on a note and deed of trust effectuating and securing Mr. Thomas's obligations under the New Contract.  The obligation under the New Contract purportedly arises from Mr. Thomas's agreement to repay the Vuncannons for the expenses and costs incurred in completing the project for which they already had paid in full. Under the terms of the New Contract, the loan evidenced by the contemplated promissory note would be repaid upon the earliest of the Thomas's getting a mortgage on the Property, selling the Property, or the passage of twelve (12) months.

The Vuncannons testified that the New Contract contains the true and accurate signature of Mr. Thomas, which the Vuncannons personally witnessed Mr. Thomas sign.  Mr. Thomas, although conceding that the signature looks like his authentic signature, denies that the signature

is his, and also denies ever having any conversation with the Vuncannons about a loan on his residence or any advance of funds to complete the Project.

In addition to the New Contract, the Vuncannons offered into evidence as Exhibits A and B, the Deed of Trust and Promissory Note, respectively. The Vuncannons testified that the Note and Deed of Trust were drawn up by their attorney. The Note evidences an obligation in the amount of $50,000 with a maturity date of September 10, 2010. The Note does not require any payments until maturity. Although the Note contains signature blanks for Mr. Thomas and the Debtor, the copy of the Note filed with the Proof of Claim is unsigned. The Deed of Trust contains a putative notarization of the signatures of the Debtor and Mr. Thomas. According to the Vuncannons, Mr. Thomas took the unsigned Note and Deed of Trust with him after their meeting on September 10, 2009, so that he could have the Debtor execute the Note and Deed of Trust, and have each of their signatures notarized. The Vuncannons further testified that Mr. Thomas delivered the fully executed Note and notarized Deed of Trust to them on the morning of September 11, 2009, which he represented had been executed by the Debtor and him, with the signatures on the Deed of Trust notarized. Mr. Thomas denies ever having the meeting, signing the New Contract, or delivering any note or deed of trust to the Vuncannons. Having considered the testimony, demeanor, and credibility of the witnesses, the Court finds that Mr. Thomas signed the New Contract in the presence of the Vuncannons, and delivered a copy of the Deed of Trust, which he represented to the Vuncannons had been signed by the Debtor and him. For the reasons set forth below, however, the Court determines that the Claimant failed to establish by a preponderance of the evidence that Mr. Thomas delivered a copy of a putatively signed Note.

Despite Mr. Thomas's execution of the New Contract and delivery of the Deed of Trust, the Vuncannons concede that they did not witness Mr. Thomas or the Debtor execute the Note or

the Deed of Trust, but relied upon the notarization of the Thomas' signatures on the Deed of Trust. Once they received the signed copy of the Deed of Trust, their attorney recorded the Deed of Trust with the Guilford County Register of Deeds on their behalf. After recording the Deed of Trust, their attorney returned the original signed Deed of Trust to them. Ms. Vuncannon stated that she placed a copy of the original signed Note and the Deed of Trust in a hidden drawer in her dresser in the home.

The Project was completed in late December, 2009. The Vuncannons did not commence any action to enforce the Note upon maturity in September of 2010. The Vuncannons testified that they were waiting for Mr. Thomas to sell his residence to collect the debt in lieu of commencing any legal action, but that they sent more than one demand for payment.

The Claimant testified that, at some time later, she went to the dresser to retrieve the documents, but only a copy of the Deed of Trust was in the hidden drawer. There was no signed copy of the Note in the dresser. Each of the Vuncannons testified that neither of them removed the original Note from the dresser. Claimant testified that Mr. Thomas still was working in the house for months after the Claimant placed the Note in the dresser, but there was no evidence that Mr. Thomas knew of the location of the hidden drawer.

The Debtor testified that she never had seen the Note or the Deed of Trust prior to the bankruptcy case, had not signed either, and never met or had any dealings with the Vuncannons or the putative notary. During her testimony, the Debtor not only disputed the authenticity of her signature on the Deed of Trust by stating she had not signed it but also explained that the signature purported to be hers obviously was not authentic because of certain discrepancies between the signature on the Deed of Trust and her actual signature. The Debtor offered into evidence four original wet ink signatures that she testified were her genuine signatures on her

bankruptcy petition, Form B22C, Statement of Financial Affairs, and the Verification of the Creditor Matrix as Exhibit 2. These documents were admitted without objection.  In comparing the signatures on the bankruptcy petition to the signature on the Deed of Trust during her testimony, the Debtor pointed out differences.   Specifically, the Debtor stated the "l", "s", and "c" letters as written in her name were significantly different in her original signature from the signature on the deed.  The Debtor also noted that the letters on the deed were slanted, whereas she always wrote her letters up and down.  The Debtor testified that she always signed her signature in the same way.  For the reasons set forth below, the Court finds as a fact that the signature on the Deed of Trust is not the Debtor's signature.

DISCUSSION

Debtor disputes the existence of the debt on the grounds that the Claim was filed without supporting documents and the unsigned Note and recorded Deed did not bear the true signature of the Debtor.  The Vuncannons respond that the obligation is authentic, that the Note is enforceable as a lost note under N.C. Gen. Stat. § 25-3-309, and that the Deed of Trust is enforceable as a notarized signature.

**The Enforceability of the Note Under the UCC**

The parties do not dispute that the Note is a "negotiable instrument" as defined under N.C. Gen. Stat. § 25-3-104, and is governed by Article 3 of the Uniform Commercial Code as adopted by North Carolina ("UCC").  Claimant asserts that she is entitled to enforce the Note as a lost note under N.C. Gen. Stat. § 25-3-309(a), which provides:

> A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an

7

unknown person or a person that cannot be found or is not amenable to service of process.

(emphasis added). Since a lost note only is enforceable to the extent that the person in possession was entitled to enforce it at the time it was lost, the Court first considers whether the Claimant established that she was entitled to enforce the instrument against the Debtor.

Under N.C. Gen. Stat. § 25-3-401, "[a] person is not liable on an instrument unless (i) the person signed the instrument, or (ii) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under G.S. 25-3-402." The Debtor alleges that she did not sign the Note. The Claimant and Mr. Vuncannon testified that Mr. Thomas delivered a copy of the Note to them that purported to contain the signature of the Debtor, and that Mr. Thomas represented was signed by the Debtor, but neither of them saw her sign the Note. In order for the Debtor to be liable under the Note based upon Mr. Thomas signing it on her behalf, Mr. Thomas either actually had to be acting on her behalf or have represented to the Vuncannons that he signed the Note acting on her behalf. N.C. Gen. Stat. § 25-3-402(a) ("If a person acting, or purporting to act, as a representative signs an instrument by signing either the name of the representative or the name of the signer, the represented person is bound by the signature…."). The Claimant does not assert that Mr. Thomas signed the Note on behalf of the Debtor with her actual or apparent authority, and there was no evidence that the Debtor authorized Mr. Thomas to sign the Note as a representative of the Debtor. Instead, the Vuncannons testified that Mr. Thomas delivered the Note, which he represented actually had been signed by the Debtor.

The Claimant carries the ultimate burden of proof to establish her claim by a preponderance of the evidence. In re Harford Sands, Inc., 372 F.3d 637, 640 (4th Cir. 2004). For the reasons set forth below, the evidence presented by Claimant was insufficient to establish

by a preponderance of the evidence that Mr. Thomas delivered a signed copy of the Note or that the Debtor actually signed the Note.

The Claimant failed to produce a copy of the signed Note. The Vuncannons each testified that neither of them witnessed the Debtor sign the Note or Deed of Trust or ever even spoke to her prior to the petition date. Neither of the Vuncannons testified that the Debtor ever orally confirmed her obligation evidenced by the Note or otherwise agreed to be bound by the underlying obligation. The Claimant testified that she placed a copy of the signed Note and the filed Deed of Trust in a hidden drawer in a dresser in her home. The Claimant further testified that she did not re-examine the Note until she went to look for it years later and could not find it in the drawer but that the copy of the allegedly signed Deed of Trust remained in the drawer. Claimant testified that the Note itself contained a notarized signature, but Mr. Vuncannon testified that the Claimant was mistaken and that the signature on the Note was not notarized. Therefore, testimony of the Vuncannons was inconsistent with respect to the form of the Debtor's signature on the Note. The Vuncannons implied that the signed Note was found and removed by Mr. Thomas because he was still working in the house at the time that she hid the Note and Deed of Trust in the dresser, but there was no indication that Mr. Thomas knew of the hidden drawer, the location of the Note, or why only the Note was removed but the Deed of Trust was left behind.

Based upon the testimony of the witnesses, the Claimant failed to carry her burden of proof to establish the existence of the signed Note. The only additional evidence tending to establish the existence of the signed Note is the Deed of Trust. The Deed of Trust acknowledges that the Debtor and Mr. Thomas are "indebted to…[the Vuncannons] in the principal sum of Fifty Thousand and 00/100 Dollars ($50,000.00), as evidenced by a Promissory Note of even

date herewith, the terms of which are incorporated herein by reference. The final due date for

payments of said Promissory Note, if not sooner paid, is September 10, 2010." (Deed of Trust,

p. 1). Similarly, the unexecuted copy of the Note attached to the Proof of Claim has a maturity

date of September 10, 2010. Therefore, the Court will consider whether the evidence

established the authenticity of the Debtor's purported execution of the Deed of Trust.

### The Presumption of Regularity for the Notarized Signature on the Deed of Trust

Under North Carolina law, a deed of trust is a conveyance of a land that represents the

security for payment of a debt, which may be evidenced by a promissory note, and as such must

meet the requirements for transfer of land. See Complex, Inc. v. Furst, 43 N.C. App. 95, 108,

258 S.E.2d 379, 309 (1979), aff'd, 57 N.C. App. 282, 291 S.E.2d 296 (1982); citing WEBSTER,

REAL ESTATE LAW IN NORTH CAROLINA, §230, p. 274 (1971). As with a negotiable instrument,

the writing evidencing the conveyance must be signed by the party or by another person

authorized by her to act as agent. Matter of Mills, 68 N.C. App. 694, 696, 315 S.E.2d 716, 717

(1984) (finding a deed of trust to be ineffective as a matter of law where husband signed the deed

but the wife's signature was performed by the husband's secretary at his direction). Signatures

placed upon deeds have a presumption of validity. As stated by the North Carolina Supreme

Court:

> [I]n the absence of any contest at the execution of that deed, and where no
> evidence is introduced to assail it, the presumption thus raised as to its due
> execution will warrant the court in directing the jury to find in favor of the
> validity of the deed; but when its execution is denied, and evidence is introduced
> which tends to show that it was not executed, the burden of proof is on the party
> claiming under the deed, but he is entitled to the full benefit of the presumption as
> evidence in his favor . . . .

Belk v. Belk, 175 N.C. 69, 94 S.E. 726, 727 (N.C. 1917). In Belk, the court states the

presumption is rebutted upon the denial of execution and the introduction of other evidence that

supports a claim that there was no execution. As set forth below, the Debtor has presented other

evidence sufficient to rebut the presumption of execution.  The Deed of Trust in this case, however, is notarized.  Therefore, the Court also must consider the effect of the notarization.

The Deed of Trust contains an acknowledgment by a North Carolina Notary Public, accompanied by her seal.  North Carolina has adopted the Notary Public Act.   N.C. Gen. Stat. 10B-1 et seq. (the "Notary Act").  Under the Notary Act:

> In the absence of evidence of fraud on the part of the notary, or evidence of knowing and deliberate violation of this Article by the notary, the courts shall grant a presumption of regularity to notarial acts so that those acts may be upheld, provided there has been substantial compliance with the law.  Nothing in this Chapter modifies or repeals the common law doctrine of substantial compliance in effect on November 30, 2015.

N.C. Gen. Stat. § 10B-99 (2006).  "To impeach a notary's certification, there must be more than a bare allegation that no acknowledgment occurred."  Moore v. Moore, 108 N.C. App. 656, 659, 424 S.E.2d 673, 675 (1993).  See also In re Adoption of "Baby Boy", 757 S.E.2d 343, 350 (N.C. App. 2014) (citing Moore for proposition that a putative signor who does not dispute that she executed a notarized document, but merely advances a technical argument that the notary is defective, fails to present sufficient evidence to overcome the presumption of regularity created in favor of the validity of notarial acts).

The presumption of regularity in favor of notarial acts focuses on the actions of the notary.  As indicated by the language of the statute, the evidence presented by the defendant must tend to show "fraud on the part of the notary, or evidence of knowing and deliberate violation of this Article by the notary…."  N.C. Gen. Stat. § 10B-99.  Evidence that the notarized signature is not authentic, accompanied by a denial that the signature was executed or acknowledged before the notary necessarily will be evidence tending to show a violation of the Article by the notary.

N.C. Gen. Stat. § 10B-3(1) defines an "acknowledgment" by the notary to be a notarial act in which the notary certifies that all of the following occurred at a single time and place: (1) an individual appeared in person before the notary and presented a record; (2) the individual was personally known to the notary or identified by the notary through satisfactory evidence; and (3) the individual either acknowledged her signature or signed the record while in the presence of the notary.  As applicable in this case, N.C. Gen. Stat. § 10B-20(c) prohibits a notary from performing an acknowledgment if the principal is not in the notary's presence at the time the notarial act is performed, and the principal is not personally known to the notary or identified by satisfactory evidence.  Similarly, the Notary Act prohibits a notary from giving a notarial certificate if the notary does not have personal knowledge of the identity of the principal or satisfactory evidence of her identity.  N.C. Gen. Stat. § 10B-40(a).[4]  The evidence in this case was sufficient to rebut the presumption of regularity of the notarial acknowledgment on the Deed of Trust.

Debtor cites In re Bowling, 314 B.R. 127 (Bankr. S.D. Ohio 2004), in support of her argument that she has sufficiently demonstrated that the signature on the Deed of Trust is not authentic.  Although the Court agrees that the evidence in this case sufficiently has rebutted the presumption of regularity, to the extent that Bowling stands for the proposition that a mere testimonial denial of the regularity of the acknowledgment is sufficient under Ohio law to rebut the presumption of regularity, the holding is contrary to the Notary Act and North Carolina law.  Applying Ohio law, the court in Bowling held that Ohio has not adopted a per se rule that the mortgagor's testimony alone is never sufficient to overcome the presumption of validity of the notary's certificate.  Id. at 134-135 (citing Paramount v. Berk, 179 N.E.2d 788 (Ohio App.

---

[4] A "notarial certificate" is "[t]he portion of a notarized record that is completed by the notary . . . ."  N.C. Gen. Stat. § 10B-3(12).

1962), and observing that the court in <u>Berk</u> held that a mere denial is insufficient only when opposed by affirmative testimony of the notary).  In <u>Moore</u>, however, the North Carolina Court of Appeals held that, under North Carolina law, there must be more than a bare allegation that no acknowledgment occurred in order to impeach a notary's certification.  108 N.C. App. at 659, 424 S.E.2d at 675.

Even in the absence of the holding in <u>Moore</u>, it is clear that a mere testimonial denial without more is insufficient to rebut the presumption of authenticity of a signature under theUCC.  <u>See</u> <u>Marshal v. J.P. Morgan Chase & Co.</u>, Civil Action No. DKC 14-3339, 2015 WL 4459966, *5 (D. Md. July 20, 2015) (under section 2-308 of the UCC, "[t]he general, conclusory denial of validity, without any allegation of facts to support that denial, is plainly insufficient . . . .").  <u>See</u> <u>also</u> <u>In the Matter of Bass</u>, 366 N.C. 464, 470-71, 738 S.E.2d 173, 177 (2013) (holding that a lender's blank endorsement of a mortgage was conclusively presumed to be valid where the defendant did not produce any evidence beyond stating that she could not confirm that the lender's endorsement signature was valid); <u>Brentwood Scottsdale LLC v. Smith</u>, No. 1 CA-CV 15-0067, 2015 WL 728364, *4 (Ariz. App. Div. 1 February 19, 2015) (citing, <u>inter</u> <u>alia</u>, <u>Bass</u>, and stating that a defendant only must produce "some evidence" that the signature was unauthorized); <u>In re Phillips</u>, 491 B.R. 255, 273 (Bankr. D. Nev. 2013) (where the defendant "introduced no evidence, let alone 'some evidence . . . which would support a finding that . . . the signature was forged or unauthorized,'" the presumption of validity was conclusive); <u>In re Stanley</u>, 514 B.R. 27, 40 (Bankr. D. Nev. 2012) (same).  It would make little sense if the presumption of regularity of a notarial act were more easily rebutted than rebutting the authenticity of a signature that is not notarized, and such a rule would be contrary to the expressed policy of the Notary Act.  <u>See</u> N.C. Gen. Stat. § 10B-2 (the Notary Act shall be

13

construed and applied to advance, among other purposes, preventing forgery, fostering ethical conduct among notaries, and enhancing the recognition of notarial acts).

The evidence in this case, however, goes beyond a mere testimonial denial of the regularity of the acknowledgment.   The signature on the Deed of Trust is markedly different than the Debtor's authenticated signatures.  The Court has compared the authenticated signatures contained in Exhibit 2 to the putative signature on the Deed of Trust.  The signature on the Deed of Trust is significantly dissimilar from the Debtor's actual signature.  Specifically, and among other discrepancies, the Court notes: (1) all four of the authenticated signatures contain the Debtor's full name, including her middle name "Scarborough," while the disputed signature contains only the initial "S"; (2) the "C" in the disputed signature is more rounded than the "C" and the "c" in the authenticated signatures, each of which contains a sharpened peak; (3) each of the "C's" and the "c's" in the authenticated signatures contains an initial down stroke before a reversal up into the peak of the "c," but the "C" in the disputed signature does not; (4) the Debtor's first name appears to end in an "e" or a very compressed "a" in the disputed signature, rather than the clearly scripted "a" in the authenticated signatures; (5) the dot over the second "i" in "Cecilia" is placed directly over the "a" in all four of the authenticated signatures, but is directly over the "i" in the disputed signature; (6) there is no dot over the first "i" in the disputed signature, but the first "i" is dotted in each of the authenticated signatures; (7) the "T" and the "h" at the beginning of the Debtor's last name in the authenticated signatures were written as separate letters, while the top of the "T" is directly linked to the top of the "h" in the disputed signature; (8) the top of the "S" in the middle name of the authenticated signatures is a straight, slanted line, but is a rounded semi-circle in the disputed signature; and (9) the authenticated signatures contain legible letters for the entirety of the Debtor's name, but the "mas" in

14

"Thomas" in the disputed signature is illegible.[5]  Based upon these discrepancies and the testimony of the witnesses, the Court finds that the signature on the Deed of Trust were not the Debtor's authentic signatures.  Therefore, the Court finds that any signature on the Note, if there ever was one, is not the Debtor's signature.

Courts similarly have recognized that the trier of fact may review authenticated signatures to the disputed signature to rebut the presumption of regularity of a notarial acknowledgment.  See U.S. Bank v. Arizmendy, 999 N.Y.S.2d 798, 2014 WL 4086560, *2 (N.Y. Sup. August 13, 2014) (unpublished) (in holding that the defendant had successfully rebutted the presumption of validity of a notarized signature, the court found that, "[a]lthough the Defendant does not offer forensic handwriting analysis or expert testimony to validate its allegations of forgery, the markedly different signatures may reasonably be deemed a forgery by the trier of fact"); Montgomery v. Jackson, 2006 WL 3530559, *6 (Mass. Land Ct. December 8, 2006) (in order to rebut presumptive validity of notarial acknowledgment, "[p]eople familiar with the real signature of the person whose signature is in question are competent to render an opinion as to the authenticity of the disputed signature"); Samuel v. Frederick, 262 S.W. 713, 716 (Mo. 1924) (presumption of validity of a notarial certificate of acknowledgment is not conclusive, and may be rebutted by the trial court comparing the signature on the disputed document with other admitted signatures of the defendant).

The Federal Rules of Evidence further support the authority of the Court to determine the authenticity of signatures by comparison.  Pursuant to Federal Rule of Evidence 901(b)(3), the

---

[5] The distinguishing characteristics of the "mas" in the disputed signature as noted by the Court in (9) above is distinctly similar to Mr. Thomas's purported signature on the Deed of Trust and the New Contract, as is the distinctive construction of the "m" in the name "Thomas," and the connection of the "T" to the "h" in "Thomas." Mr. Thomas's purported signature on the Deed of Trust is substantially similar to his signature on the New Contract, which the Vuncannons testified he signed in their presence.  In his testimony, Mr. Thomas conceded that the signature on the New Contract looked like his signature, but he denied that he signed it.

Court, as trier of fact, may compare a handwriting sample with an authenticated sample to determine whether it is genuine without the assistance of expert testimony.  In re Saenz, Bankr. Case No. 13-70423, A.P. No. 13-07024, 2015 WL 4558759, *10 n.14 (Bankr. S.D.Tex. July 27, 2015).  See also Commonwealth v. Colburn, No. 13-P-194, 2014 WL 4650240, *3 (Mass. App. Ct. September 19, 2014) ("'Where signatures . . . have been admitted in evidence as genuine and submitted to the fact finder, they may be used as a standard against which the fact finder may compare the disputed signatures and decide the question of authorship without the need for expert testimony.'" (quoting Commonwealth v. O'Connell, 783 N.E.2d 417, 422, 438 Mass. 658, 662 (2003)).  Cf. In re Gatling's Will, 234 N.C. 561, 567, 68 S.E.2d 301, 305 (1951) (the "court determines whether there is prima facie evidence of agency or of the genuineness of writing admitted as a basis of comparison, and then the testimony of the witnesses, and the writings (in the plural) themselves are submitted to the jury").

Although the substantial dissimilarity in the signatures alone is additional evidence of irregularity, the Court does not consider the evidence of the signatures and the Debtor's denial in a vacuum.  The Court has considered the entirety of the record in this case.  As observed above, the testimony of the Vuncannons and Mr. Thomas was wholly irreconcilable.  Mr. Thomas denied not only the execution of the New Contract, but also any of the facts surrounding and reflected in it.  The Vuncannons testified not only to the underlying facts, but also to Mr. Thomas signing the New Contract in their presence.  The Court has determined that the Vuncannons' testimony was the more credible with respect to Mr. Thomas's execution of the New Contract. Having accepted the Vuncannons' version of the testimony as the more credible version of events, and considering that Mr. Thomas has conceded that the signature on the New Contract looks like his authentic signature and that the disputed signature of the Debtor on the Deed of

Trust bears similarities to Mr. Thomas's signature, it is likely that the signature is not the Debtor's. Therefore, the presumption of regularity has further and successfully been rebutted by the Debtor.

The presumption of validity having been successfully rebutted by the evidence, the Claimant was required to establish the authenticity of the Debtor's signature and the efficacy of the notarial acknowledgment. The Claimant offered no evidence in support of the authenticity of the signature or the notary's compliance with the Notary Act. The Claimant did not offer any handwriting evidence. Most obviously, the Claimant did not offer the testimony of the notary, and provided no explanation to the Court for this glaring omission, including providing to the Court an explanation for any inability to subpoena the notary or otherwise to obtain her testimony. Mr. Vuncannon testified that they relied solely upon the notarization of the signature on the Deed of Trust. The Vuncannons have failed to carry the burden of proof to establish that the Debtor executed the Note and that the Claimant is entitled to enforce the Note as a lost note pursuant to N.C. Gen. Stat. § 25-3-309. Therefore, the Claimant has failed to carry her burden to establish the Debtor's obligations under the Note, the underlying obligation as purportedly acknowledged by the Deed of Trust, and the Deed of Trust itself.

<u>CONCLUSION</u>

For the reasons set forth herein, the Court will enter its Order sustaining the Debtor's Claim Objection and disallowing the Vuncannon Claim.

[END OF DOCUMENT]